# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# LUFKIN DIVISION

| | | |
|---|---|---|
| MELISSA TYSON, | § | |
| | § | |
| *Plaintiff*, | § | CIVIL ACTION NO. 9:19-CV-00140 |
| | § | JUDGE MICHAEL TRUNCALE |
| v. | § | |
| | § | |
| COUNTY OF SABINE, DAVID W BOYD, | § | |
| INDIVIDUALLY AND IN HIS OFFICIAL | § | |
| CAPACITY AS CONSTABLE; AND | § | |
| THOMAS N MADDOX, | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Before the Court are Defendant County of Sabine, Thomas Maddox, and David Boyd's (collectively, "Defendants") separate Motions for Summary Judgment. [Dkt. 57, 58]. Defendant Boyd also filed a Supplemental Motion for Summary Judgment. [Dkt. 84]. The Court has considered the motions, the evidence, and the applicable law. For the reasons stated below, the Court **GRANTS** Defendants' motions for summary judgment.

### I. BACKGROUND

This case arises from an encounter between Plaintiff Melissa Tyson ("Tyson") and law enforcement officer David Boyd ("Deputy Boyd") at Tyson's residence on September 19, 2018. During a scheduled welfare check of Tyson, Deputy Boyd made sexually explicit comments to her, requested that she expose her breasts and vagina, and masturbated on her front porch.

#### A. Factual Background

On September 15, 2018, Tyson and her husband Wade Tyson ("Wade") had an argument while they were out of town. Tyson became so upset that she drove back to their residence in

1

Hemphill, Texas that evening. Three days later, on September 18, 2018, Wade called the County of Sabine Sheriff's department and asked them to conduct a welfare check on Tyson because she was not returning his phone calls. Deputy Boyd was assigned to the matter and called Tyson around 5:00 p.m. that evening. During the call, Deputy Boyd identified himself as a deputy with Sabine County Sheriff's Office and informed Tyson of the purpose of the call. He indicated that he was also a preacher. Tyson and Deputy Boyd spoke for over an hour on the phone. At the end of the call, Deputy Boyd told Tyson that he would come by her residence the next morning.

The next day, on September 19, 2018, Deputy Boyd called Tyson around 10:00 a.m. and arrived at her residence shortly thereafter. He arrived in a plain vehicle but wore a black t-shirt that had the word "Sheriff" across the front in gold lettering. After introducing himself, he hugged Tyson, and they went to sit on her front porch. This was the first time Tyson and Deputy Boyd met. Deputy Boyd remained at her residence for approximately two hours.

At some point during the welfare check, Deputy Boyd asked if Tyson had any security cameras and whether she had neighbors. Deputy Boyd told Tyson that he saw her at a restaurant the night before and that he and a fellow officer commented on her body and "what they would do to her sexually if they could." Deputy Boyd also mentioned a swinger's club in Hemphill, Texas and that he would issue tickets to attendees after finding marijuana and drug paraphernalia in their cars. Tyson alleges that when Deputy Boyd made those comments, he faced a window into her house near where she left a marijuana pipe sitting on the table. Tyson believes that Deputy Boyd mentioned issuing tickets because he saw her marijuana pipe.

Deputy Boyd then called his wife on his cell phone. He put her on speaker phone and told her he wanted pictures of her breasts and vagina. He then asked his wife if she "would like a big breasted redhead between her legs." Tyson had red hair at that time. Tyson then asked Deputy

2

Boyd if he would like a bottle of water. When Tyson went inside her home to get the water, Deputy Boyd followed her. Tyson did not invite him inside. After receiving water, Deputy Boyd followed Tyson back outside.

Once back outside, Deputy Boyd began asking Tyson about her sex life with her husband. Deputy Boyd asked her, among other things, whether she and Wade considered having a threesome and whether Wade would mind if someone watched them have sex. Deputy Boyd then asked Tyson to show him pictures of Wade. Tyson showed him nude pictures of Wade on her phone. Deputy Boyd then said to Tyson, "[l]et me see your breasts," and Tyson complied. Deputy Boyd then said, "[s]how me your p***y" and "show [me your] c**t." Tyson stood there for a minute and then complied. Tyson alleges that she only complied with Deputy Boyd's commands because she feared that he would issue her a ticket for possession of marijuana paraphernalia if she did not comply. Deputy Boyd then unbuttoned his pants and masturbated in front of Tyson. Tyson closed her eyes while Deputy Boyd ejaculated on her front porch. Deputy Boyd then left Tyson's residence. He tried to text Tyson several times after the incident, but she never responded. Tyson immediately reported the incident to the Texas Rangers.

### B. Procedural Background

In April 2019 Tyson filed suit, asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against the Defendants based on their alleged violations of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. [Dkts. 1, 52]. On August 16, 2019, Deputy Boyd was indicted by the State of Texas for the offenses of sexual assault, indecent exposure, and official oppression in violation of Texas Penal Code §§ 22.011, 21.08, 39.03, respectively. [Dkt. 62, p. 1]. After several temporary stays due to Deputy Boyd's pending criminal

case and COVID-19, the Court denied Defendants' request for an additional extension of the stay. [Dkt. 67]. Defendants filed the present motions for summary judgment. [Dkts. 57, 58, 84].

## II. LEGAL STANDARD

Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The moving party is entitled to judgment as a matter of law if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting *Celotex*, 477 U.S. at 323). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Id.* If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Id.*; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Anderson*, 477 U.S. at 248–49). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the nonmovant must show that

"the evidence is such that a reasonable jury could return a verdict" in the nonmovant's favor. *Anderson*, 477 U.S. at 248.

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000). The Court resolves factual controversies in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075

### III. DISCUSSION

The Civil Rights Act of 1871, 42 U.S.C. § 1983, creates a private right of action for redressing the violation of federal law by those acting under color of state law. *Dist. Atty's Office for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 65 (2009); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The statute is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere. *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 n.3 (5th Cir. 1999). "The first inquiry in any § 1983 suit is to isolate the precise constitutional violation with which [the defendant] is charged." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quotations omitted). For the Court to impose liability under Section 1983, Plaintiff must establish that she has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002).

Tyson brings her Section 1983 claims against Defendants based on their alleged violations of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. For the reasons discussed below, the Court finds that the record establishes as a matter of law that no

constitutional violation occurred. Without an underlying constitutional violation, Tyson's claims fail, and summary judgment must be granted.

### A. Fourth Amendment Claim

Tyson's Fourth Amendment excessive force claim fails as a matter of law. The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures." U.S. CONST., amend. IV, § 1. "To prevail on an excessive force claim, a plaintiff must establish: (1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable. *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007); *Ratliff v. Aransas Cnty., Tex.*, 948 F.3d 281, 287 (5th Cir. 2020). Because the record conclusively establishes that Tyson was not "seized" for purposes of the Fourth Amendment, the Court does not reach whether Deputy Boyd's use of force was clearly excessive and unreasonable.

By its terms, the Fourth Amendment proscribes only unreasonable searches and seizures. Therefore, to sustain an excessive force claim, a plaintiff must "first show that she was seized." *Pena v. Givens*, 637 F. App'x 775, 779 (5th Cir. 2015) (quoting *Flores v. City of Palacios*, 381 F. 3d 391, 396 (5th Cir. 2004)). A person is "seized" for Fourth Amendment purposes, "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). When a person has been restrained through a show of authority, that person has been seized "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that they were not free to leave." *McLin v. Ard*, 866 F.3d 682, 691 (5th Cir. 2017) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988)). "The reasonable-person test is objective and ensures 'that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual'

claiming a violation." *Id.* (quoting *Chesternut*, 486 U.S. at 574); *see also United States v. Mendenhall*, 446 U.S. 544, 552–54 (1980) (distinguishing between an intrusion amounting to a "seizure" of a person and an encounter that intrudes upon no constitutionally protected interest). In *United States v. Elmore*, the Fifth Circuit laid out examples of when a "seizure" may occur:

> Thus, seizures have been found when an encounter is precipitated by a show of authority, such as when a siren was used to pull a motorist over; when a motorist stepped out of his camper, with his hands up, in response to an officer's knock on the camper door; or when under other circumstances it was 'apparent . . . that the individual was not free to ignore the officer and proceed on his way.'

595 F.2d 1036, 1041 (5th Cir. 1979) (citations omitted).

Without citing a single case, Tyson argues that she was seized because Deputy Boyd intimidated her to the point where she "reasonably believe[d] she was under [his] control and her liberty was restrained." [Dkt. 86, p. 15]. Tyson argues that Deputy Boyd's "implied threat of charging her with possession of marijuana" is sufficient and that "[t]here was no other reason he would have brought up marijuana paraphernalia but to communicate to her" that he had seen her marijuana pipe. *Id.* Despite these allegations, the record demonstrates that Tyson's freedom of movement was not restrained and that a reasonable person would have felt free to walk away. *See Mendenhall*, 446 U.S. at 552–54 ("As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.").

The events at issue here took place on Tyson's front porch after she and Deputy Boyd agreed that he would visit her to conduct a welfare check. Deputy Boyd did later abuse his authority when he sexually assaulted Tyson. But his overall conduct would not have communicated to the reasonable person that they were not free to leave or otherwise end the encounter for purposes of the Fourth Amendment. Deputy Boyd did not display any weapons or

7

threaten to harm or arrest Tyson for any crime. Nor did he make compliance with his requests a condition of Tyson's safety or freedom. Tyson was not under investigation of any sort, nor was she ever chased, arrested, or detained. There is no indication that Tyson asked Deputy Boyd to leave or that any physical contact occurred. Other than Tyson's speculation, there is no evidence that Deputy Boyd saw her marijuana pipe. Deputy Boyd did not say that he saw the pipe or discuss it with her. Deputy Boyd's presence during a scheduled welfare check, his proximity to Tyson's marijuana pipe, and his mention of lawfully ticketing others for possessing drug paraphernalia are wholly insufficient to amount to a seizure of Tyson's person. *See Mendenhall*, 446 U.S. at 554 ("Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled."); *Chesternut*, 486 U.S. at 575 ("While the very presence of a police car driving parallel to a running pedestrian could be somewhat intimidating, this kind of police presence does not, standing alone, constitute a seizure."); *Florida v. Royer*, 460 U.S. 491, 497 (1983) (plurality opinion) (noting that mere approach by law enforcement officers, identified as such, does not constitute seizure); *see also Terry*, 392 U.S. at 19 n.16 ("Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons."); *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 795 (8th Cir. 1998) (noting that sexual assault by an officer does "not fit the mold of a typical fourth amendment search and seizure case"). Tyson's subjective belief that she was under a non-explicit threat of being ticketed—no matter how genuine—is insufficient to support a finding that she was "seized" for purposes of the Fourth Amendment. *See McLin*, 866 F.3d at 691 ("The reasonable-person test is objective . . . .").

To be clear, the Court does not hold that Tyson consented to, or invited, Deputy Boyd's sexual assault. Defendants' gross mischaracterization of this incident as such is wrong. A citizen's acquiescence is not consent, and no degree of sexual assault by a police officer is ever proper. But on the facts of this case, no unlawful "seizure" of Tyson occurred. Accordingly, Tyson's Fourth Amendment claim fails as a matter of law and cannot serve as the basis for her Section 1983 claim.

### B. Eighth Amendment Claim

Tyson's Eighth Amendment cruel and unusual punishment claim fails as a matter of law. The Eighth amendment protects only those who have been convicted of a crime. *Ingraham v. Wright*, 430 U.S. 651, 664, 671–72 (1977); *Thibodeaux v. Bordelon*, 740 F.2d 329, 333–34 (5th Cir. 1984). At the time of the incident, Tyson was not convicted of a crime. The protections of the Eight Amendment, therefore, do not apply to Tyson and cannot support her Section 1983 claim.

### C. Fourteenth Amendment Claim

Tyson's Fourteenth Amendment claim also fails as a matter of law. The substantive component of the Fourteenth Amendment's due process clause protects individual liberties, such as the right to bodily integrity, from unreasonable governmental intrusion. *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992); *see, e.g.*, *McClendon v. City of Columbia*, 305 F.3d 314, 322 n.5 (5th Cir. 2002). An abuse of authority by law enforcement personnel may violate this protection, but "only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (quoting *Collins*, 503 U.S. at 128). To determine whether government action meets this standard, the court must ask "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 847 n.8. In a non-seizure substantive due process claim of excessive force, as is alleged here, a plaintiff must

show that the defendant's actions (1) injured the plaintiff, (2) "were grossly disproportionate to the need for action under the circumstances," and (3) "were inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience." *Petta v. Rivera*, 143 F.3d 895, 902 (5th Cir. 1998). Tyson's resulting psychological injuries satisfy the injury requirement. *See id.* at 903; *Guillot v. Castro*, No. CV 17-6117, 2018 WL 3475294, at *6 (E.D. La. July 19, 2018) ("Courts have held that mental health issues incurred as a result of sexual assault is sufficient to establish an injury."). However, Tyson cannot carry her burden to prove that Defendants' actions were inspired by malice and amounted to an abuse of official power that shocks the conscience in a legal or constitutional sense. This is the case even though Boyd's actions, if true, are vile, contemptuous, and extremely inappropriate.

While the Supreme Court has recognized a substantive due process right to bodily integrity, *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997), "[t]he Fifth Circuit case law in this area is sparse." *Young v. Isola, Miss.*, No. 3:15cv108, 2016 WL 6916790, at *5 (N.D. Miss. Nov. 23, 2016), *rev'd on other grounds by* 708 F. App'x 152 (5th Cir. 2017) (per curiam). Courts have recognized a liberty interest in bodily integrity only in very limited circumstances and have been "reluctant to expand the concept of substantive due process." *See Collins*, 503 U.S. at 125. Some acts of sexual assault by a state actor, like rape or child molestation, are consistently considered so outrageous and egregious that they clearly violate a person's right to bodily integrity. *See, e.g.*, *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451–52 (5th Cir. 1994) (finding a substantive due process violation where fifteen-year-old freshman was sexually molested and statutorily raped by a high school teacher). *But see Morris v. Dearborne*, 181 F.3d 657, 668 (5th Cir. 1999) (finding no substantive due process violation where a teacher sat a four-year-old child on his lap and guided the child's hand to type violent and sexually explicit messages).

In other cases, the Fifth Circuit has found actionable substantive due process claims where the state action involved deadly force or violent acts and threats of death. *See Petta*, 143 F.3d at 902–03 (finding that an officer violated substantive due process when he threatened to kill the plaintiff during a traffic stop and fired his gun at her vehicle while her children were inside); *Jefferson v. Ysleta Indep. Sch. Dist.*, 817 F.2d 303, 305 (5th Cir. 1987) (holding that a teacher tying a second grader to his chair for two days violated the child's substantive due process right "to be free of state-occasioned damage to a person's bodily integrity."); *see also Summers v. Hinds Cnty., Mississippi*, No. 3:20-CV-266-DPJ-FKB, 2020 WL 7495601, at *9 (S.D. Miss. Dc. 21, 2020) (finding an actionable substantive due process claim where officers fired shots into a vehicle carrying a suspect and his six children and where bullets grazed the suspect's shoulder and one child's neck). *But see Gressett v. City of New Orleans*, No. CV 17-16628, 2018 WL 3642008, at *3 (E.D. La. Aug. 1, 2018), *aff'd sub nom. Gressett v. New Orleans City*, 779 F. App'x 260 (5th Cir. 2019) (finding that an officer's verbal harassment of adult plaintiff with one hand on his holstered gun and the other on his holstered taser was not an abuse of official power that shocks the conscience).

But it does not appear that courts have extended substantive due process protections to incidents of sexual assault where no physical touching occurs, as is alleged here. Even in cases that do involve inappropriate sexual touching, courts have often found no violation of bodily integrity where the touching is not especially egregious under the circumstances. *See, e.g.*, *Mims v. Oliver*, No. CV H-15-644, 2017 WL 3034032, at *13 (S.D. Tex. July 18, 2017), *report and recommendation adopted*, No. CV H-15-644, 2017 WL 3575706 (S.D. Tex. Aug. 17, 2017) (finding no substantive due process violation where a college professor solicited sex from a student and in one instance blocked the student from leaving his office, forced her up against his body,

11

and grabbed her breasts); *Guillot*, 2018 WL 3475294, at *7 (finding an officer's "one-time, brief, inappropriate sexual touching" of plaintiff's breasts without an accompanying threat did not violate substantive due process); *Chestang v. Alcorn State Univ.*, 820 F. Supp. 2d 772, 779–80 (S.D. Miss. 2011) (finding no substantive due process violation where college student alleged "unwanted sexual advances" by his professor, consisting of "several telephone calls and in-person conversations as well as one incident when [the professor] 'rubbed against [the student's] body.'"); *see also Decker v. Tinnel*, No. 04-227, 2005 WL 3501705, at *8 (N.D. Ind. Dec. 20, 2005) (holding that unwanted kissing and groping from an police officer during a car ride that was not accompanied by force was distinct from more egregious assaults, like rape and child molestation, and does not rise to the level of a due process violation).

In cases involving pretrial detainees and inmates, the Fifth Circuit has repeatedly held that sexual harassment without physical contact does not rise to the level of a constitutional violation. *See, e.g.*, *Ponce v. Lucas*, 590 F. App'x. 444, 445 (5th Cir. 2015) (per curiam) ("[S]exual harassment claim fails because verbal abuse and threatening language and gestures do not give rise to a cause of action under § 1983"); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) ("[A]n unjustified serious *physical* assault against an inmate raises an arguable section 1983 claim," but "mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations.") (emphasis added) (quotations omitted); *see also Jane Doe 5 v. City of Haltom City, Tex.*, 106 F. App'x. 906, 908 (5th Cir. 2004) (per curiam); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993).

Here, Tyson alleges that she exposed her breasts and vagina to Deputy Boyd at his request and without explicit objection, that Deputy Boyd masturbated in front of her, and that he ejaculated

12

on her front porch.  [Dkt. 52, p. 4; *see also* Dkt. 84-1, at 71:21–72:25; 74:20–75:8; 76:5–77:13; 78:19–21].  Tyson testified that there was never any sexual abuse or physical contact of any kind between her and Deputy Boyd.  *Id.* at 80:19–81:17.  Tyson also testified that Deputy Boyd never threatened her with physical harm or criminal charges or otherwise made compliance with his requests a condition of her safety or freedom.  *Id.*; *see also id.* at 135:13–18.  Moreover, unlike the children affected in *Taylor*, *Petta*, *Jefferson*, and *Summers*, Tyson is an adult and alleges no violence whatsoever.  Other than briefly relying on *Petta*, Tyson cites no case to support her theory of liability.  Certainty, Deputy Boyd's conduct toward Tyson was inappropriate and uninvited.  But after careful consideration of the case law, Deputy Boyd's conduct does not shock the conscience for purposes of the Fourteenth Amendment.  As such, Tyson's substantive due process claim fails as a matter of law and cannot support her Section 1983 claim.

Although the Court has considered all arguments, the standard practice is to address only those constitutional questions necessary to resolve the dispute.  *Burton v. United States*, 196 U.S. 283, 295 (1905) ("It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case."); *Collins*, 503 U.S. at 125 ("The doctrine of judicial self-restraint requires [courts] to exercise the utmost care whenever we are asked to break new ground in [the substantive due process] field.").  The Court will, therefore, not address the other non-dispositive issues raised in Defendants' motions.  Because the record presents no genuine issue of material fact for the jury as to whether any constitutional violation occurred, Tyson's Section 1983 claims against Defendants fail as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, the summary judgment evidence on file does not support that any constitutional violation occurred. Defendants have, therefore, carried their burden to prove that no genuine issue exists for trial and that summary judgment is proper.

It is therefore **ORDERED** that Defendant County of Sabine and Thomas Maddox's Motion for Summary Judgment [Dkt. 57] is hereby **GRANTED**.

It is further **ORDERED** that Defendant David Boyd's Motion for Summary Judgment [Dkt. 58] and Supplemental Motion for Summary Judgment [Dkt. 84] are hereby **GRANTED**.

A final judgment will be entered separately.

**SIGNED this 14th day of July, 2021.**

*Michael J. Truncale*
Michael J. Truncale
United States District Judge